UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.            ) | CRIMINAL NO. 04-10091-MEL |
| ) | |
| RICHARD A. RAMEY    ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Richard Ramey, respectfully moves this Court sentence him to three years' probation with the first six months of the probation under house arrest.  Defendant submits that the advisory guideline range should be 0-6 months' imprisonment because (1) Mr. Ramey's false alarm about a possible bomb did not cause substantial disruption as envisioned under U.S.S.G. § 2A6.1(b)(4) and (2) the false alarm involved just a single incident evidencing little deliberation.  In any event, a sentence of six months house arrest is consistent with the factors outlined in 18 U.S.C. § 3553(a) and is "sufficient, but not greater than necessary" to effectuate the purposes of the sentencing statute.  Id.

**FACTS**[1]

Richard Ramey is a 30 year-old man who was born and raised primarily in Marlborough, Massachusetts.  His mother and family describe him as a "loving and good person" who has undergone a

---

[1] This statement is intended primarily to highlight those facts that are not included in the Presentence Report ("PSR"), or that are the subject of dispute.

series of setbacks in the last few years.  Most notably, Mr. Ramey suffered the loss of his father to cancer in 2000 and the more recent dissolution of his marriage.  These setbacks have led to a recent diagnosis of major depression.  See PSR ¶ 50.

Mr. Ramey married in 2001 and has two children, Shaun (age 6) and Jacob (age 2).  The relationship soured when Mrs. Ramey began dating other men and staying out late.  The breakup was emotionally stormy, with Mr. Ramey often feeling alone and resentful that he had to take care of the children while his wife partied after hours.  The time period leading up to the instant offense was particularly difficult as the couple began to consider separating.  See PSR ¶ 43.

After a particularly stressful overnight where the couple argued about his wife's infidelity and the effect it was having on the children, Mr. Ramey arrived at his then employer's warehouse in Hudson, Massachusetts, where he worked in shipping and receiving.  In the space of an hour just before he was due to begin work for the day, Mr. Ramey typed and faxed two bomb hoax notes to his employer, ACT Electronics, suggesting that there was a bomb somewhere in the shipping and receiving department at the facility where he was working.  The facility was evacuated until Massachusetts State Police arrived soon thereafter with bomb-sniffing dogs.  After a brief search, the police determined there was no bomb present and "cleared" the building.  Notwithstanding

police assurances that the building was safe, a manager for ACT elected to send the employees working at the site home for the weekend.  The company did, however, ask for volunteer employees (including Mr. Ramey, who ACT was unaware was the source of the hoax) to relocate for the day to other facilities ACT operated in the area.

Later in the day, the FBI traced the source of the faxed hoaxes to the shipping and receiving facility in Hudson, and then to Mr. Ramey.  After being Mirandized, Mr. Ramey fully admitted his involvement in the offense, both orally and in writing.

**ARGUMENT**

I.  ACT ELECTRONIC'S RESPONSE TO THE FAXED BOMB HOAXES DOES NOT CONSTITUTE SUBSTANTIAL DISRUPTION OF BUSINESS FUNCTION.

The Probation Department has correctly identified the relevant sentencing guideline as U.S.S.G. § 2A6.1 and the corresponding base offense level of 12.  See PSR ¶ 18.  With a two level reduction for acceptance of responsibility, the Guideline Sentencing Range ("GSR") would be 6-12 months in Zone B, authorizing a sentence of probation with a home detention component.  U.S.S.G. § 5C1.1(c)(3).  Moreover, Mr. Ramey would be eligible for a further four-level reduction because the offense was but a single instance evidencing little or no deliberation.  U.S.S.G. § 2A6.1(b)(5).  This reduction would result in a total offense level of 6 and a resulting GSR of 0-6 months in Zone A,

where imprisonment is not required and probation without restrictive sanctions would be authorized.  U.S.S.G. § 5C1.1(b).

The Probation Department, however, has recommended that the Court impose a four level increase to the base offense level pursuant to U.S.S.G. § 2A6.1(b)(4) because the offense level resulted in substantial disruption of business functions.  See PSR ¶ 19.  Imposition of this four-level enhancement also precludes the Court from reducing the offense level notwithstanding Mr. Ramey's lack of any serious deliberation.  See U.S.S.G. § 2A6.1(b)(5) (reduction unavailable if, inter alia, substantial business disruption results).  After acceptance of responsibility, the resulting GSR is 12-18 months.  See PSR ¶ 77.  Defendant submits that whatever disruption occurred was not "substantial" as envisioned by the Sentencing Commission in adopting § 2A6.1(b)(4) and thus the enhancement is unwarranted.

The enhancement at issue was added to the November 1, 2002 guideline sentencing manual.  Counsel has found no circuit or district court guidance on what constitutes "substantial disruption of public, governmental, or business functions or services" in connection with § 2A6.1.  The Sentencing Commission, however, clearly envisioned a far greater impact before the enhancement was triggered.  In promulgating the enhancement, in response to the Patriot Act, the Sentencing Commission wrote:

>       a specific offense characteristic is added if the
>       offense resulted in a substantial disruption of public,
>       governmental, or business functions or services . . . .
>       This enhancement recognizes that a terrorist threat
>       usually will be directed at <u>a large number</u> of
>       individuals, governmental buildings or operations, or
>       infrastructure.  Unless such a terrorist threat is
>       immediately dismissed as not credible, the conduct may
>       result in significant disruption and response costs.

U.S.S.G. Appx. Vol. II, amendment 637 (emphasis added).  The amendment analogizes to U.S.S.G. § 2M6.1 and the disruption costs inherent in evacuating and cleaning up after a biological attack. <u>Id.</u>  As with all enhancements, the burden is upon the government to prove that the disruption was substantial.[2]

Some disruption, as occurred here with a short evacuation of employees to search and "clear" the premises, is inherent in any threat made to a business.  The clear intent of the amendment adding the enhancement, however, was to address large-scale threats resulting in costs above and beyond ordinary threats contemplated by the base offense level already in the guideline.  Defendant submits that the <u>de minimus</u> disruption that occurred here, where the threats were quickly determined to be not

---

[2]Defendant has objected to ACT's assertions as to financial loss, <u>see</u> Defendant's Objection #2, as well as to ACT's assertion that it lost production and shipments to customers, <u>see</u> Defendant's Objection #3.  The government advised the Probation Department that it would submit an affidavit from ACT concerning these issues.  As of this date, however, no such documentation has been provided.

credible, was not of a degree factually or legally as to trigger the increased punishment intended by the enhancement.

For this reason, Mr. Ramey submits that § 2A6.1(b)(4)

II. **EVEN IF THE COURT DETERMINES THE ADVISORY GUIDELINE SENTENCING RANGE TO BE 12-18 MONTHS, THIS COURT SHOULD SENTENCE DEFENDANT TO THREE YEARS' PROBATION WITH THE FIRST SIX MONTHS UNDER HOME DETENTION IN CONJUNCTION WITH INTENSIVE SUPERVISION BECAUSE SUCH A SENTENCE WILL BEST SATISFY THE SENTENCING GOALS IN 18 U.S.C. § 3553(a).**

Under the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. \_\_\_\_ (2005), the sentencing guidelines no longer are binding on the court. Instead, the court should look to 18 U.S.C. § 3553(a), and impose a sentence which is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2). Those purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

<u>Id.</u> In imposing sentence, the Court must consider all of the factors set forth in § 3553(a)(1)-(7). <u>See</u> <u>Booker</u>, 543 U.S. at \_\_\_, 2005 LEXIS 628 at *24. While § 3553(a)(4) is the applicable guideline range and § 3553(a)(5) is the Commission's policy

statements, these other factors play at least an equal role under the statutory scheme.  See United States v. Hughes, 2005 U.S. App. LEXIS 1189 at *10 (4TH Cir. January 24, 2005) (sentencing court must consider relevant factors set forth in § 3553(a), as well as the prescribed guideline range, before imposing a sentence).  Defendant thus submits that Booker expands the range of permissible factors well beyond those identified by the sentencing commission and allows a sentencing court greater flexibility in weighing those factors.

In this case, the advisory GSR of 12-18 months - as recommended by the Probation Department - is countervailed by the substantial indicia in Mr. Ramey's history and characteristics that a lesser sentence that concentrates on Mr. Ramey's major depression and reaction to stress will altogether eliminate any risk to the public.  Moreover, this Court can and should consider the collateral effects on Mr. Ramey's two young sons should he be imprisoned in a setting far from home.  Under Booker, these factors now play a part in sentencing regardless of whether they were identified as an encouraged or discouraged factor by the sentencing commission.  See United States v. Ranum, ___ F.Supp. 2d ___, 2005 U.S. Dist LEXIS 1338 at *6-7 (E.D. Wis. January 19, 2005)(Adelman, J.)("Booker is not an invitation to do business as usual;" courts need not follow old departure methodology in imposing sentence outside guideline range).

1.  **The Seriousness of the Offense, Just Punishment, Deterrence and Related Facts**.

Thus, under 18 U.S.C. § 3553(a), the Court must impose a "sentence sufficient, but not greater than necessary . . . to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant; and . . . to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective matter." Here, a sentence of six months' home confinement in conjunction with a longer intensive period of probation is "sufficient, but not greater than necessary" to accomplish those goals.

First, such a sentence imposed on a young father is no slap on the wrist. Mr. Ramey faces a period of his life where his every move will be subject to intensive scrutiny. Such a sentence would reflect the seriousness of the offense, promote respect for the law, and provide <u>just</u> punishment for the crime.

In determining whether a sentence is "sufficient, but not greater than necessary . . . to reflect the seriousness of the offense" the Court is entitled to take into account the fact that Mr. Ramey's offense, while serious, was also benign in that there was no hint of a suggestion that Mr. Ramey ever engaged in a show

-8-

of force or threat directly to any of his co-workers.  Quite the opposite is true - upon officers approaching him with the obvious intent to arrest him, Mr. Ramey made no effort to minimize or blame his co-workers but rather completely admitted his full responsibility.

For similar reasons, a six-month sentence under house arrest is sufficient to afford adequate deterrence to Mr. Ramey's further criminal conduct and to protect the public from his commission of further crimes.  Prior to this offense, Mr. Ramey's experience with imprisonment had been limited to 30-day period of incarceration at the county jail at age 20.  By contrast, Mr. Ramey has spent the last year under federal court indictment, and once sentenced by this Court will serve a substantial period of probation under intense scrutiny.  The scrutiny he has already experienced, and that he will endure in the future, are of a degree previously unknown to him and will provide the deterrence necessary to prevent him from committing future crimes.  That deterrence value is particularly acute, where he will face incarceration of up to 36 months' imprisonment should he fail to modify his behavior.

2.  **The Guideline Sentencing Range and Disparity**

As noted above, Mr. Ramey disputes the factual and legal underpinnings of the Probation Department's recommended GSR of 12-18 months.  Defendant submits, however, that considered in

light of the § 3553 goals and factors the offense level, even if that GSR applies it overstates Mr. Ramey's culpability as to the offense.  The substantial disruption adjustment, because it also precludes consideration of the mitigating lack of deliberation, provides a steep jump in offense level - from level 6 to level 13 - and in the resulting GSR.  As discussed above, the Sentencing Commission clearly envisioned a particularly severe form of disruption when determining that such a steep jump was warranted.  For example, a defendant whose bomb hoax suggested that a nuclear device had been planted at the foot of the Washington Monument in Washington, D.C. and planted a realistic replica of a device, thus necessitating evacuation of thousands of workers and citizens, would receive the same sentence as Mr. Ramey faces under the GSR calculated by the Probation Department.  Here, the Court can and should take into account that the enhancement, if it applies to Mr. Ramey, covers a broad range of possible disruption and is likely to result in unwarranted disparity in sentencing of defendants in largely identical circumstances.

**3.   The History and Characteristics of the Defendant, Provision of Rehabilitative Services, and Sentences Available**

Pursuant to 18 U.S.C. § 3553, the Court, "in determining the particular sentence to be imposed, shall consider . . . the history and characteristics of the defendant."  Consideration of Mr. Ramey's recent personal setbacks, in conjunction with the

culmination of stressors that existed at the time of the offense, militates that a probation sentence with a home detention component is reasonable and appropriate.

Mr. Ramey has, since his confession and voluntary surrender in this matter, taken affirmative steps to turn his life around. He is devoted to his sons, and consistently contributes, both financially and emotionally, to their well-being. His relationship with his soon-to-be ex-wife is on a more even keel. He is interested in returning to college so that he can provide for his family in the long term.

The sentencing commission has provided that neither family ties and responsibilities or mental and emotional condition are "ordinarily" relevant to a sentence outside of the guideline range. See U.S.S.G. §§ 5H1.3., 5H1.6. In imposing sentence in a post-Booker world, however, the Court must consider the Commission's policy statements as but one coequal factor of all of the factors set forth in § 3553(a)(1)-(7). See United States v. Hughes, 2005 U.S. App. LEXIS 1189 at *10 (4TH Cir. January 24, 2005) (sentencing court must consider relevant factors set forth in § 3553(a), as well as the prescribed guideline range, before imposing a sentence). As a result, this Court can, and indeed must, consider factors that have long been considered relevant to sentencing notwithstanding the Sentencing Commission's identification of the factor as irrelevant. See United States v.

Jones, 2005 U.S. Dist. LEXIS 833 (D. Me. January 21, 2005)(although guideline departure not warranted, variance from sentencing range necessary to effectuate efficient delivery of medical care factor in 18 U.S.C. § 3553(a)).

Mr. Ramey's is a compelling case for a variance from the established guideline range.  This Court can, and should, fashion a probationary sentence that takes into account his family obligations as well as the emotional conditions that resulted in the offense at issue.  A sentence that includes, in a probationary setting, components that address the stressors that brought Mr. Ramey before the Court is sufficient, but not greater than necessary, to effectuate the goals of § 3553(a).  See Jones, 2005 U.S. Dist. LEXIS 833 (although traditional departure unwarranted, variance from advisory GSR to effectuate services to mentally challenged defendant warranted).

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this court should sentence the defendant to three years' probation with the first six months in home detention.  The Court should impose as conditions that Mr. Ramey seek and participate in psychological counseling as directed by the Probation Department, that he seek and maintain employment, and that he continue to support his children.  The Court should impose no fine.

```
RICHARD RAMEY
By his attorney,



/s/Timothy Watkins

Timothy Watkins
  B.B.O. #567992
Federal Defender Office
408 Atlantic Ave., Third Floor
Boston, MA  02110
Tel: 617-223-8061
```