February 13, 2004

To all interested parties:

This letter is our character reference for Richard (Tony) Ramey.

We have known Tony for over six years, where we met him playing softball. We got to know him and his girlfriend at the time and started up a friendship with them. They had their first child a couple years later, then they got married. They had their second child and his wife finally turned 21. That was when their marriage started to decline. On a couple of occasions, she stayed out all night and came back in the morning just before he had to go to work. They started to argue. He tried to make it work for almost a year. They eventually separated with Tony moving out to his sisters, so the boys could stay in what was their home with their mother. He would watch his boys every night and every other weekend with some of the typical complaints of just separated couples usually have. She, at one point, signed custody over to Tony because she couldn't handle the pressure of the kids and being a single mom. Tony gave her a month to move out of the apartment and he moved in order to keep the boy's lives as normal as possible. It stayed this way up to the day of the incident and the month after the incident. We offered he live with us, since he had nowhere else to go and his family didn't have the room for him and the kids. Since we live over an hour away, and he does not have reliable transportation he really can only see his boys on weekends and holidays, which are naturally split with his ex wife.

What we can tell you about Tony prior to moving in with us, is that he takes his responsibilities seriously and would never do anything to jeopardize his boys and his relationship with them. His first priority was the boys in every decision he makes.

He did go through a few jobs including his first employment period at Act Manufacturing prior to their layoffs. Because they thought he was a good worker and employee, they called him back to work to run one of the shipping departments after their sales started to increase. He would always rave about his time back at work as being his place of solitude away from what was happening to him in his personal life. He always talked about the fun he had at work, especially the time he helped one of his co-workers by providing CPR when she stopped breathing. He also talked about some of his co-workers he liked so much because of the help they gave him both emotionally as well as gifts for the boys. That is why it was such a shock to us when the bomb scare occurred and he was one a the few that went over to the other building to help them get back on track shipping items out. He did not complain when most of the rest of the building got the day off, he did say he would of liked to have it off as well but he was planning on working the full day anyway so no big deal. Then for him to call us and say that the police believed he did it, did not ring true with us at all. Why would you hurt the one thing that was getting you through the day with your boys by doing something that stupid?

Through the whole ordeal, and his separation from his wife and children, job layoffs, automobile troubles, etc., he has handled it very well, trying to see as much positive as he can and what he has to look forward to once this is all behind him. He has only broken down a couple times since he has lived with us, but did his work with pride at the two places he was employed, and for the most part they thought he did a very good job. We truly count on him to help us with our children, he is a true friend that can be relied upon that always takes on responsibility when asked. He is one of our closest friends and honestly do not think he did this act, because it is so far out of character for him. Personally, we would trust him with our family if we were gone for whatever reasons. He is a caring, devoted father that just wants to be with his boys and be able to provide a stable environment and loving home for his boys. He takes responsibility for his actions, has always tried to do what is right and best for his children, family, and friends. He has been reading self improvement books and trying to make sense out of all of why this has happened to him. Through this ordeal he has followed all the instructions and directions given to him by the state and the government regarding this investigation.

We see Tony as a responsible adult who has had some difficult times and tries to do the right thing to the best of his ability. He has goals and dreams and aspires to be a good role model for his children. He is a good person who does not intend anyone harm, but wants to help people. He has helped us, and we have tried to provide support and encouragement through this unfortunate event that we feel he has been wrongly accused of.

Sincerely,

Faith & Christopher Macia

From:   Jodi Buxton
        115 Rivercliff Lane
        Merritt Island, Fl 32952

To:     Honorable Morris E. Lasker
        US District Judge
        1 Courthouse Way
        Boston, MA 02210

        Attn: Timothy Watkins
        Federal Defense Office

Dear Your Honor,

I am writing to you on behalf of my brother, Richard Anthony (Tony) Ramey. I have always had a very close relationship with my brother. Although I live out of state, I talk with my brother several times a month and visit with him whenever possible. I know of him to be a kind, caring, thoughtful and generous person. He is the type of person who would do or give anything to those he loves and cares about. My children are extremely fond of there uncle and enjoy spending time with him whenever they can.

My brother has expressed that he wants nothing more than to spend time with his children and family. It tears him apart to be without them on a daily basis, but he is greatful for any amount of time has has with them and cherishes every moment. From the convesations I have had with his sons, they feel the same way about the time they spend with there dad, always wanting more.

I appreciate your kindness and taking the time to read my letter. I love my brother very much, and felt you should know how much he would be missed by his family.

Sincerely,

*Jodi Buxton*

Jodi M. Buxton



February 14, 2005

**Detoxification Services (ATS)**

**Batterer's Intervention Program**

**Criminal Justice Services**

**Dual Diagnosis Acute Residential Treatment**

**Harbour House Family Shelter**

**Outpatient Substance Abuse Counseling Services**

**Project COACH**

**Second Offender's Aftercare Program**

**South Shore Arts & Recreation Center**

**Substance Abuse Intervention Program**

**Substance Abuse Rehabilitation Services (CSS)**

**Structured Outpatient Addictions Program**

**Transitional Support Services**

To Whom It May Concern:

                            Re: Richard A. Ramey
                            DOB: 10/30/74

Richard Ramey was referred to High Point Treatment Center by Judith Oxford, Drug/Alcohol Treatment Specialist, Pretrial Services, United States District Court.

Mr. Ramey's first appointment with me was on June 10, 2004. We have scheduled on a weekly basis, and since that time he has had 21 individual sessions. At least one time per month the session is canceled because of a conflict in my schedule.

Mr. Ramey's treatment focused on an assessment of his use of alcohol which resulted in a finding of no diagnosis, based on his reported alcohol use history. While he does occasionally over use alcohol, there is no established pattern to meet criteria for abuse or dependence. He appears to have been forthcoming regarding his alcohol use during the course of our contact.

I would assess him as being a depressed individual, ruling out an adjustment disorder with depressed mood and assigning his mood disorder to be a low grade, chronic, clinical depression, probably dysthymic disorder, without adequate treatment due to lack of insurance to provide for a medical evaluation and prescription payment. Mr. Ramey also displays symptoms of a generalized anxiety disorder.

His early participation in sessions was adequate, though shallow, which is not uncommon for many court-referred individuals who may be fearful of session content being inappropriately shared and who may take time to build trust in the process. This client was highly defended when we first met, and has gradually become more self-revealing although he remains guarded, in part, he states, to help

himself get through the possibility of incarceration as an outcome of Thursday's court hearing. He and I have discussed the lack of truthfulness he displayed regarding the loss of his last job, and he is aware of the negative impact this could have regarding the Court's view of his efforts over the past eight months. I believe that with long-term treatment, this client has potential to change in regard to improving social skills, reducing social and emotional isolation, and moving toward his genuine self.

Sincerely,

*Margaret Pike-Thomson*

Margaret Pike-Thomson, LICSW, CADAC II, LADC